FILED

AUG 2 7 2007

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:04-cv-06732-AWI-SMS |
| Plaintiff, | ) | |
| v. | ) | **CONSENT ORDER** |
| COVENANT RETIREMENT COMMUNITIES WEST, INC., d/b/a COVENANT VILLAGE OF TURLOCK, MT. MIGUEL COVENANT VILLAGE, THE SAMARKAND, and COVENANT SHORES; COVENANT RETIREMENT COMMUNITIES, INC., d/b/a COVENANT VILLAGE OF GOLDEN VALLEY, COVENANT VILLAGE OF COLORADO, COVENANT VILLAGE OF CROMWELL, COVENANT VILLAGE OF FLORIDA, COVENANT VILLAGE OF THE GREAT LAKES, COVENANT VILLAGE OF NORTHBROOK, THE HOLMSTAD, WINDSOR PARK MANOR, BETHANY COVENANT VILLAGE, and COVENANT HOME OF CHICAGO; and COVENANT VILLAGE OF PORTLAND LIMITED PARTNERSHIP, d/b/a IRVINGTON VILLAGE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

The parties have filed a motion for entry of a consent judgment in the above entitled

action. See Court's Docket Doc. Nos. 26-28. The United States' Complaint alleges that

defendant Covenant Retirement Communities West, Inc., d/b/a Covenant Village of Turlock, Mount Miguel Covenant Village and The Samarkand, violated the Fair Housing Act based on disability, 42 U.S.C. §§ 3601-3619 ("the Act").[1]  The parties agree that Covenant Retirement Communities, Inc., d/b/a Covenant Village of Colorado, Covenant Village of Golden Valley, Covenant Village of Cromwell, Covenant Village of Florida, Covenant Village of the Great Lakes, Covenant Village of Northbrook, The Holmstad, Windsor Park Manor, Bethany Covenant Village, and Covenant Home of Chicago,  Covenant Retirement Communities West, Inc., d/b/a Covenant Shores, and Covenant Village of Portland Limited Partnership, d/b/a Irvington Village shall be included within the terms of this Consent Order and that an Amended Complaint shall be filed contemporaneously in this matter.  This Consent Order resolves the case.

## I. BACKGROUND

1. Defendant Covenant Retirement Communities West, Inc. ("CRCW"), does business as and owns Covenant Village of Turlock ("Turlock"), Mount Miguel Covenant Village ("Mount Miguel"), and The Samarkand (collectively "California facilities"), as well as Covenant Shores, which are continuing care retirement facilities with independent, assisted living and skilled nursing residences. Defendant CRCW manages the operations of Turlock, Mount Miguel, The Samarkand, and Covenant Shores, including selling and/or renting the residential units and setting policies respecting such.

2. Defendant Covenant Retirement Communities, Inc. ("CRC"), owns Defendant CRCW and does business as and owns Covenant Village of Golden Valley, Covenant Village of Colorado, Covenant Village of Cromwell, Covenant Village of Florida, Covenant Village of the

---

[1]When used in this Consent Order, the terms "disability" and "handicap" are synonymous.

2

Great Lakes, Covenant Village of Northbrook, The Holmstad, and Windsor Park Manor, which are continuing care retirement facilities with independent, assisted living and skilled nursing residences.  CRC also does business as and owns Bethany Covenant Village, which provides assisted living and skilled nursing residences, and Covenant Home of Chicago, which provides only assisted living residences.  Defendant CRC manages the operations of each of these facilities, including selling and/or renting the residential units and setting policies respecting such.

3.  Defendant Covenant Village of Portland Limited Partnership owns and does business as Irvington Village.   Irvington Village provides assisted living residences.  Covenant Village of Portland Limited Partnership also manages the operations of Irvington Village, including selling and/or renting the residential units and setting policies respecting such.[2]

4.  The subject facilities (collectively "subject facilities") are located at the following addresses:

Turlock:  2125 North Olive, Turlock, California.

Mount Miguel:  325 Kempton St., Spring Valley, California.

The Samarkand:  2550 Treasure Drive, Santa Barbara, California.

Covenant Village of Colorado:  9153 Yarrow St., Westminster, Colorado.

Covenant Village of Golden Valley:  5800 St. Croix Ave., Golden Valley, Minnesota.

Covenant Shores:  9150 Fortuna Dr., Mercer Island, Washington.

Covenant Village of Cromwell:  52 Missionary Rd., Cromwell, Connecticut.

---

[2]Where "CRC" is used in subsequent paragraphs of this Consent Order, it is synonymous with and includes CRCW, Covenant Village of Portland Limited Partnership and each of the subject facilities.

3

Covenant Village of Florida: 9201 W. Broward Blvd., Plantation, Florida.

Covenant Village of the Great Lakes: 2510 Lake Michigan Dr., N.W., Grand Rapids, Michigan.

Covenant Village of Northbrook: 2625 Techny Rd., Northbrook, Illinois.

The Holmstad: 700 W. Fabyan Parkway, Batavia, Illinois.

Windsor Park Manor: 124 Windsor Park Dr., Carol Stream, Illinois.

Bethany Covenant Village: 2309 Hayes St., N.E., Minneapolis, Minnesota.

Covenant Home of Chicago: 2720 West Foster Ave., Chicago, Illinois.

Irvington Village: 420 NE Mason St., Portland, Oregon.

5. Each of the 12 continuing care facilities houses approximately 300 elderly residents in its independent living, assisted living and skilled nursing units. The three other facilities house approximately 100 or more residents each in assisted living and/or skilled nursing but not independent living units. All of the subject facilities have numerous common use facilities, including dining rooms, cafes, lounges, computer-access areas, auditoriums, chapels, health clinics, swimming pools, libraries, hair salons, barber shops, craft and hobby rooms, fitness rooms, therapy facilities, and shops. Three meals per day are served in the dining rooms.

6. Each of the units at the subject facilities is a "dwelling" within the meaning of the Act, 42 U.S.C. § 3602(b). Each resident, applicant and person who may be interested in residing at a subject facility who has a physical impairment which substantially limits one or more of his or her major life activities, has a record of having such an impairment, or is regarded as having such an impairment is "handicapped" within the meaning of the Act, 42 U.S.C. § 3602(h).

7. The Amended Complaint alleges that Defendant CRCW employs policies that

4

discriminate against persons with disabilities and their families, including: prohibiting the use of mobility aids, including canes, walkers, wheelchairs, motorized wheelchairs, and/or motorized scooters, in the dining rooms at the California facilities; requiring residents who use motorized mobility aids to purchase liability insurance; restricting the use of motorized mobility aids inside common buildings; requiring that motorized mobility aids be parked in certain exterior areas; permitting the use of motorized mobility aids only if, inter alia, the user provides a physician's order and passes a performance test, and CRCW's nurse determines it is necessary; and steering persons who use mobility aids, including crutches, walkers and wheelchairs, to live in the assisted living facility at Turlock, rather than the independent living residences.

8. The Amended Complaint further alleges that Defendant CRC employs policies that discriminate against persons with disabilities and their families by setting discriminatory conditions for the use of motorized mobility aids, including: permitting use only if the resident, inter alia, submits a doctor's certification that the aid is necessary and he or she is fit to operate it, submits to a test, at his/her expense, to determine whether he or she can operate it to CRC's satisfaction, attends annual training, at his or her expense, and signs an agreement to comply with all restrictions on such aids; and requiring that they be parked in limited exterior areas.

9. The Amended Complaint alleges further that through the above-described policies and practices, Defendants have: 1) discriminated in the rental of, or otherwise made unavailable or denied, dwellings to renters because of disability, in violation of 42 U.S.C. § 3604(f)(1); 2) discriminated in the terms, conditions, or privileges of rental of a dwelling, and in the provision of services or facilities in connection with such a dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2); 3) made, printed or published, or caused to be made, printed or

5

published, a notice or statement with respect to the rental of dwellings that indicates a preference, limitation, or discrimination based on disability or an intention to make such a preference, limitation, or discrimination, in violation of 42 U.S.C. § 3604(c); and 4) represented to persons because of disability that a dwelling is not available for rent when such dwelling is in fact available, in violation of 42 U.S.C. § 3604(d).  In addition, the Amended Complaint alleges that Defendants' above-described conduct constitutes a pattern or practice of discrimination in violation of the Act and a denial to a group of persons of rights granted by the Act, which raises an issue of general public importance.  42 U.S.C. § 3614(a).

10.  The parties agree that the Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 3614(a).

11.  Although the United States' Complaint initially was limited to the three California facilities, Defendants agree with the United States that persons with disabilities who use mobility aids, including motorized mobility aids, may not be subjected to unlawful discrimination at any of the subject facilities.  Therefore, the United States and Defendants agree to jointly execute this Consent Order.  Accordingly, the parties agree that Defendants shall comply with the terms of this Consent Order for the full duration of its term.

12.  Defendants deny the contentions and allegations of the United States, as set forth above in paragraphs 7-9 and in the Amended Complaint and deny any liability based on any of these allegations.  Defendants deny that they employed any policies that discriminated against or otherwise restricted persons with disabilities who used mobility aids and their families, including, but not limited to, steering those who use mobility aids to live in assisted living and placing unreasonable and unlawful time, place and manner restrictions on the use of motorized

6

mobility aids. Defendants have agreed to settle this lawsuit to avoid the expense, vagaries and risks of litigation and to ensure the best interests of their residents and to fulfill, and not be distracted from, CRC's Mission Statement regarding the care of residents. Therefore, the parties agree that the claims against Defendants should be resolved without further proceedings and an evidentiary hearing, and as indicated by the signatures appearing below, the parties agree to the entry of this Consent Order. This Consent Order constitutes full resolution of the United States' claims that Defendants discriminated against persons with mobility impairments at the subject retirement communities.

Therefore, it is hereby ORDERED, ADJUDGED and DECREED as follows:

## II. INJUNCTIVE RELIEF

13. Defendants, their officers, employees, agents, successors and assigns and all other persons in active concert or participation with them are enjoined from:

A) Discriminating on the basis of disability as prohibited by the Fair Housing Act, 42 U.S.C. §§ 3601-3619.

B) Coercing, intimidating, threatening or interfering with any person in the exercise or enjoyment of, or on account of his/her having exercised or enjoyed, or on account of his/her having aided and encouraged any other person in the exercise or enjoyment of, any right granted by the Act, including anyone who participated in any way in the United States' investigation of the allegations that gave rise to this action.

C) Requiring residents or prospective residents with disabilities who use motorized

7

mobility aids[3] to purchase liability insurance for use of such aids and/or requiring residents to hold Defendants harmless or name Defendants as an additional insured for injuries or damage resulting from the use of such aids. All Motorized Scooter Agreements and agreements to hold Defendants harmless respecting such shall be null and void. All liability insurance policies held by residents that name Defendants as an additional insured respecting motorized mobility aids shall be unenforceable by Defendants.

D) Prohibiting residents or prospective residents with disabilities who use mobility aids (e.g., canes, walkers, wheelchairs, motorized wheelchairs, motorized scooters) from using such aids inside any common-use building or in any dining room.

E) Requiring residents or prospective residents with disabilities who use motorized mobility aids to park such aids outside common-use buildings. Where exterior parking is optional, it shall be provided near the front entrance to the building.

G) Setting any conditions on, or otherwise restricting, the use of motorized mobility aids by persons who are "handicapped" within the meaning of the Act, 42 U.S.C. § 3602(h), unless such use would constitute a direct threat to the health or safety of others or would result in substantial physical damage to the property of others.[4]  See 42 U.S.C. § 3604(f)(9). All current

---

[3]For purposes of this Consent Order, "motorized mobility aid" means a single chair or seat mounted on a motorized apparatus with three or more wheels designed for use by persons with mobility disabilities. Examples of motorized mobility aids are motorized wheelchairs and motorized scooters.

[4]Defendants may however establish reasonable traffic and parking rules for the safe operation of motorized mobility aids, e.g., speed, yielding to pedestrians, optional parking areas for users who choose to park their mobility aids outside. Defendants may not require that persons who bring their motorized (or other) mobility aids into the dining room eat at specified tables, but may designate or set aside seating pursuant to the request of such persons or to ensure that mobility aids do not block ingress or egress of others in the case of an emergency.

8

Power Operated Vehicle ("POV") and motor driven scooter policies and agreements shall be null and void.

H) Refusing to accept as residents persons with disabilities who use mobility aids in independent living units, or otherwise steering such persons to assisted living facilities, when such housing is available and they are otherwise qualified for independent living.[5]

14. Defendants shall, within ten days of entry of this Order, implement a policy ensuring nondiscrimination against persons with disabilities who use mobility aids. This policy, the "Mobility Aids Policy," is attached at Appendix A.

15. Within 30 days of entry of this Order, Defendant CRCW shall submit a request to the State of California to change its licenses so as to permit CRCW to house non-ambulatory persons in all dwelling units at Mt. Miguel and The Samarkand that may be occupied by non-ambulatory persons, pursuant to California law. See 10 Cal. Health & Safety Code §§ 13131 & 13131.5. Defendant CRCW shall permit any non-ambulatory person who is otherwise qualified for independent living to reside in any dwelling unit at Mt. Miguel and The Samarkand that the State of California has determined may be occupied by non-ambulatory persons. Nothing in this paragraph shall require Defendants to make any structural modifications to any dwelling unit at Mt. Miguel or The Samarkand.

## III. PUBLIC NOTICE OF NON-DISCRIMINATION POLICY

16. Within 14 days of the entry of this Order and throughout the term of this Order,

---

[5]Defendants shall not be required to violate any State or local law or regulation regarding care and supervision in continuing care retirement housing to the extent such law does not conflict with the Fair Housing Act or the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189. Nor shall this Consent Order require defendants to make any structural modifications to any dwelling units.

9

Defendants shall post and prominently display the following in the marketing offices, administrators' offices, dining halls and auditoriums at all residential properties that they own or operate: A) the Mobility Aids Policy, and B) a sign no smaller than 10 inches by 14 inches stating that "CRC does not discriminate pursuant to the Fair Housing Act subject to any exemptions that may apply."

17. Within 14 days of the entry of this Order, Defendants shall provide a copy of the Mobility Aids Policy to the residents at all residential properties that they own or operate. Those facilities that provide Resident Handbooks shall incorporate the Mobility Aids Policy into the next edition of the handbook. In addition, throughout the term of this Order, Defendants shall include in all application packets, and provide to all applicants and prospective applicants, a copy of the Mobility Aids Policy. Handbooks incorporating the Mobility Aids Policy may be provided to applicants, prospective applicants and new residents in lieu of stand-alone copies of such policy.

18. Throughout the term of this Order, Defendants shall ensure that all advertising for all residential properties they own or operate, in newspapers, telephone directories, television, internet, or other media, and on signs, pamphlets, brochures and other promotional literature, includes a statement that "CRC does not discriminate pursuant to the Fair Housing Act subject to any exemptions that may apply." The words or logo shall be prominently placed and easily legible. Within 60 days, any advertising or promotional item, or portion thereof, used for residential living (i.e., independent living), such as a brochure or an internet website, that displays five or more human models shall include at least one model using a wheelchair, motorized scooter, walker or cane in that item.

10

## IV. TRAINING

19.  Within 14 days of the entry of this Consent Order, Defendants shall provide a copy of this Order and the Mobility Aids Policy to all Campus Administrators, Associate Administrators and all other agents and employees whose duties, in whole or in part, involve the showing, renting, selling, managing, or marketing of residential units and shall secure the signed statement from each such agent or employee acknowledging that he or she has received, read and understood the Consent Order and the Policy, and has had an opportunity to have questions about the Order and Policy answered.  This acknowledgment shall be substantially in the form of Appendix B.

20.  Within 14 days after the date on which a newly hired or promoted Campus Administrator, Associate Administrator, and other agent or employee involved, in whole or in part, in the showing, renting, selling, managing, or marketing of residential units commences an agency relationship or employment with Defendants, Defendants shall provide to such newly hired or promoted agent or employee a copy of this Order and the Mobility Aids Policy and require him or her to sign a statement acknowledging that he or she has received, read and understood the Order and Policy, and had an opportunity to have questions about the Order and Policy answered.  This acknowledgment shall be substantially in the form of Appendix B.

21.  Within 120 days of the entry of this Consent Order, Campus Administrators, Associate Administrators, and all other employees and agents whose duties, in whole or in part, involve the showing, renting, selling, managing, or marketing of residential units shall undergo fair housing training.  The training shall focus on disability discrimination, the Mobility Aids Policy and the proper procedures for handling any report of discrimination based on disability

11

and the use of a mobility aid.  The training shall be conducted by a qualified third party,

approved by the United States,[6] and any expenses associated with this training shall be borne by

Defendants.  Those who attend the training shall be required to sign a certification confirming

their attendance, in a form substantially equivalent to Appendix C.  During the term of this

Consent Order, Defendants shall require all newly-hired or newly-promoted employees and

agents whose duties, in whole or in part, involve the management or administration of residential

retirement communities or other residential properties to undergo fair housing training within 60

days of the commencement of his or her new employment.

## V.  DAMAGES FOR AGGRIEVED PERSONS

22.  Within 45 days of the Order, Defendants shall pay to each person who paid to be

tested on the use of their motorized mobility aid TWO HUNDRED FIFTY DOLLARS ($250)

per test as reimbursement for the cost of each test and their time, and shall pay to each person

who was tested but did not pay to be tested TWO HUNDRED DOLLARS ($200) per test as

reimbursement for their time.  Payment need not be made if tests were performed because an

incident report(s) indicated that the person's operation of the motorized mobility aid constituted a

direct threat to the health or safety of others or would have resulted in substantial physical

damage to the property of others.[7]  Payment shall be made from the settlement fund described in

---

[6]At least 60 days prior to the first training session, Defendants shall submit to the United States the name of the trainer they propose to complete the training and an outline of the training course.  The United States may request, in writing, any additional information or materials that it may require in order to make a reasonable determination regarding whether it will approve the proposed training program.  The United States' approval shall not be unreasonably delayed, withheld or denied.

[7]Such incident reports shall be provided to the United States prior to CRC's determination not to pay for a test.

the following paragraph without regard to whether or not such person makes a claim, and he or she still may file a claim as described in the next paragraph for damages exceeding this amount.[8]

23.  Within 30 days of the entry of this Order, Defendants shall deposit in an interest-bearing escrow account the total sum of FIVE HUNDRED THIRTY THOUSAND DOLLARS ($530,000) for the purpose of paying monetary damages to aggrieved persons who suffered as a result of Defendants' policies and practices regarding persons with disabilities who use(d) mobility aids.[9]  Any interest that accrues shall be the property of the fund.  This money shall be referred to as "the Settlement Fund."

24.  Within 45 days of the entry of this Order, Defendants shall begin publishing a Notice to Potential Victims of Housing Discrimination ("Claim Notice"), set forth at Appendix D, informing readers of the availability of compensatory funds.  The Claim Notice shall be no smaller than three columns by six inches and shall be published on two occasions each in the newspaper with the highest circulation serving the 100 square mile area in which each of the subject facilities is located.  The two publication dates per newspaper shall be separated from one another by at least 21 days and shall be on Sunday.  Within 10 days of each publication date, Defendants shall provide the original newspaper containing the Claim Notice to counsel for the United States.

25.  Within 20 days of the entry of this Order, Defendants shall send a copy of the Claim Notice to the organizations specified at Appendix E.

---

[8]In addition, these payments shall be made without the court order required for distribution of other claims, as described in paragraphs 29-30 of this Order.

[9]"Aggrieved persons" are further described in the Notice to Potential Victims of Housing Discrimination at Appendix D.

26.  Within 30 days of the entry of this Order, Defendants shall transmit a copy of the

Claim Notice to each current resident, each living former resident, each person who submitted an

application, and each person who had a get acquainted visit ("GAV"), overnight visit ("OV"),

overnight stay ("STAY"), or tour ("TOUR") at one of the subject facilities in the following

manner:  by hand-delivery to each current resident, and by first-class mail, postage prepaid, to

each living former resident, each person who applied, and each person who had a GAV, OV,

STAY or TOUR at the address last known by Defendants.  Within 45 days of entry of this Order,

Defendants shall provide to counsel for the United States proof that the Claim Notices have been

sent.

27.  Nothing in this Section shall preclude the United States from making its own efforts

to locate and provide notice to potential aggrieved persons.  The United States, in its sole

discretion, may provide the Claim Notice to any persons or entities.

28.  Allegedly aggrieved persons shall have 120 days from the entry of this Order

("Claims Bar Date") to contact the United States in response to the Claim Notice.  Any Claim

received after the Claims Bar Date shall be barred.  The United States shall investigate the claims

of allegedly aggrieved persons and, within 240 days from the entry of this Order, shall make a

preliminary determination of which persons are aggrieved and an appropriate amount of damages

that should be paid to each such person.  The United States will inform Defendants, in writing, of

its preliminary determinations, together with a copy of a sworn declaration from each aggrieved

person setting forth the factual basis of the claim and copies of any supporting documentation.

The United States, at its discretion, may submit its preliminary determinations on a rolling basis

and need not submit all such determinations at the same time.  Defendants shall have 90 days to

review the declarations and provide to the United States any declarations, documents or other evidence and arguments that they believe may refute the claim. The United States shall provide Defendants with any amendments to, and supplemental materials in support of, a declaration which it obtains in response to the materials provided by Defendants. The parties shall engage in good faith discussions regarding the United States' recommendations in an attempt to stipulate to a fair resolution and disposition for each disputed claim.

29. For all claims on which the parties agree, the parties shall submit a stipulated order for entry by the Court specifying the name of the claimant and the amount payable to that claimant. For those claims on which the parties are unable to agree, the United States shall file a motion requesting that the Court make a determination as to the proper amount of each disputed claim, the United States' final recommendations to the Court for approval, a copy of the declarations and any supporting evidence, and any declarations or additional information provided by Defendants. The Court may request any additional evidence, including testimony, that it deems appropriate.

30. When the Court issues an order approving or changing the United States' proposed distribution of funds for aggrieved persons, Defendants shall, within 15 days of the Court's order, deliver to counsel for the United States checks payable to the aggrieved persons in the amounts approved by the Court. In no event shall the aggregate of all such checks exceed the sum of the Settlement Fund, less the total sum paid pursuant to paragraph 22 above, and including accrued interest. With the exception of the payments described in paragraph 22 above, no aggrieved person shall be paid until he/she has executed and delivered to counsel for the United States the release at Appendix F. The United States shall transmit the signed releases to Defendants

contemporaneously with its transmittal of the checks to the aggrieved persons.

31.  Defendants shall permit the United States, upon reasonable notice, to review any records that may facilitate its determinations regarding the claims of allegedly aggrieved persons. Prior to making a determination as to an allegedly aggrieved person's claim, the United States shall request from Defendants, and Defendants shall make available, all relevant documentation in their possession concerning such allegedly aggrieved person, including resident files, applicant files, daily contact sheets, and other relevant documents, so that the United States may consider such documentation in assessing the claim of the allegedly aggrieved person.

32.  If, after all payments to aggrieved persons have been made, a balance remains in the Settlement Fund, the Court shall order that any balance remaining be returned to Defendants.

## VI.  PAYMENT TO VINDICATE THE PUBLIC INTEREST

33.  Within 10 days after the entry of this Consent Order, Defendants shall pay THIRTY THOUSAND DOLLARS ($30,000) to the United States to vindicate the public interest, pursuant to 42 U.S.C. § 3614(d)(1)(C).  This payment shall be delivered to counsel for the United States in the form of a check payable to the "United States Treasury."

## VII.  RECORD KEEPING AND MONITORING

34.  Within 30 days of the entry of this Order, and thereafter on the anniversary of the entry of this Order, Defendants shall submit to the United States the signed statement of each agent and employee referred to in paragraphs 19-20, above.[10]

---

[10]All submissions to the United States or its counsel shall be made by facsimile and first-class mail to:  U.S. Department of Justice, Civil Rights Division, Housing and Civil Enforcement Section – NWB, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530, Attn: DJ No. 175-12C-577.  The facsimile number is (202) 514-1116.  The Housing and Civil Enforcement Section's main phone number is (202) 514-4713.

35. Within 45 days after the training required by paragraph 21, above, Defendants shall provide the following to the United States: the name(s), address(es) and telephone number(s) of the trainer(s); copies of the training outlines and any materials distributed by the trainers; and the signed certifications of each employee and agent referred to in paragraph 21, above, confirming their attendance at the training.

36. Within 45 days of entry of this Consent Order, Defendant CRCW shall provide to the United States copies of its submissions to the State of California regarding its licenses at Mt. Miguel and The Samarkand. Within 10 days of receipt of the re-issued licenses, Defendant CRCW shall provide to the United States copies of such licenses.

37. Within 60 days of entry of this Consent Order, Defendants shall transmit to the United States proof of the payments required by paragraph 22, above, showing for each payee: his or her name, address, and amount of payment.

38. During the term of this Consent Order, with respect to all independent and assisted living residences, Defendants shall ensure that each of the following are maintained:

A) An on-site Inquiry Register for all persons who inquire about residing on the campus. The Register shall contain space for each person to record the following information when he or she visits the campus: the date of inquiry; the person's name, current address and telephone number; whether the person uses any mobility aid, and if so, what type; and the person's signature. The top portion of the Register shall contain the following disclaimer: "The following

---

Any submissions to Defendants shall be made by facsimile and first-class mail to: (1) Karl N. Klockars, Executive Vice President of Legal Affairs, Covenant Ministries of Benevolence, 5145 North California Ave., Chicago, IL 60625, facsimile (773) 878-2617, phone (773) 989-3995; and (2) Kevin F. Woodall, Esq., Foley & Lardner LLP, One Maritime Plaza, Sixth Floor, San Francisco, CA 94111, facsimile (415) 434-4507, phone: (415) 984-9812.

information is requested to assist Covenant Retirement Communities, Inc., in complying with the Fair Housing Act and will be kept confidential.  Indicating that you use a wheelchair, scooter, or other assistive device for mobility is voluntary, and this information is not required in order to apply for, or obtain, a unit on this campus at any level of care." Defendants shall endeavor to seek the cooperation of all persons inquiring in completing the Inquiry Register but cannot guarantee such cooperation; and

B) An Application Log, setting forth the name of each applicant and specifying whether he/she uses a mobility aid (based on the employee's or agent's good-faith observation); whether the application for residency was approved or rejected, or if the applicant was placed on a wait list; if approved, the unit number; and if rejected, an explanation for the rejection.

39.  On the anniversary of the entry of this Order throughout the term of the Order, Defendants shall deliver to the United States copies of the materials required by the preceding paragraph for the preceding year.

40.  For the duration of this Order, Defendants shall preserve all records related to this Order and to all residential retirement communities owned, operated or acquired by them. Such documents include, but are not limited to, advertisements, applications, leases, resident assessment materials, resident files, policies and procedures, and inquiry logs.  Upon reasonable notice to Defendants, representatives of the United States shall be permitted to inspect and copy any of Defendants' records or inspect any covered dwelling under Defendants' control at any and all reasonable times so as to determine compliance with the Consent Order; provided, however, that the United States shall endeavor to minimize any inconvenience to Defendants from such inspections.

18

41.  During the term of this Consent Order, Defendants shall notify counsel for the United States in writing within 21 days of receipt of any written or oral complaint against Defendants, their agents or employees, regarding discrimination in housing.  If the complaint is written, Defendants shall provide a copy of it with the notification; if the complaint is oral, Defendants shall include a written summary of it with the notification.  The notification shall include the full details of the complaint, including the complainant's name, address, and telephone number.  Defendants shall also promptly provide the United States with all information it may request concerning any such complaint.  Defendants shall provide the United States with the details of any resolution of such complaints within 21 days of resolution.

## VIII.  DURATION OF ORDER AND TERMINATION OF LEGAL ACTION

42.  This Consent Order shall remain in effect for three years after the date it is entered by the Court.

43.  By consenting to entry of this Order, the parties agree that in the event it is determined in any future action or proceeding brought by the United States or any agency thereof that Defendants violated the Fair Housing Act, any civil penalties pursuant to that determination shall be assessed as provided in 42 U.S.C. § 3614(d)(1)(C)(ii).

44.  The Court shall retain jurisdiction for the duration of this Consent Order to enforce the terms of the Order, after which time the case shall be dismissed with prejudice.  Prior to the expiration of the Consent Order's term, the United States may move the Court to extend the duration of the Order in the interests of justice.

45.  The parties shall endeavor in good faith to resolve informally any differences regarding the interpretation of, and compliance with, this Order prior to bringing such matters to

19

the Court for resolution.  However, in the event that Defendants fail to perform in a timely manner any act required by this Order or otherwise act in violation of any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity.

### IX.  TIME FOR PERFORMANCE

46.  Any time limits for performance imposed by this Consent Order may be extended by the mutual agreement of the United States and Defendants.

### X.  COSTS OF LITIGATION

47.  Each party to this Consent Order shall bear its own costs and attorney's fees associated with this litigation.

**IT IS SO ORDERED**:


_____5-27-07_____
Date

_____
Anthony W. Ishii
United States District Judge

20

# APPENDIX A

# MOBILITY AIDS POLICY

## PREAMBLE

It is the policy of Covenant Retirement Communities ("CRC") that all residents and visitors at any of its campuses who use mobility aids[1] due to a disability be free from all discrimination or harassment and have full access to campus facilities and residential units.

## USE OF MOBILITY AIDS PERMITTED ON CRC CAMPUSES

All residents and visitors to any CRC campus who use mobility aids, including motorized mobility aids,[2] shall have full access to any dwelling unit (so long as he or she is otherwise qualified for such housing) and to any common area on campus that is otherwise open and available to the public.  Accessible common areas include, and are not limited to, dining rooms, cafés, lounges, computer-access facilities (e.g., a "cyber café" or "cyber lounge"), fitness and exercise rooms, therapy or spa facilities, swimming pools, beauty salons, nail salons, barber shops, libraries, chapels, offices, restrooms or auditoriums.

A resident or visitor with a physical impairment which substantially limits his or her ability to walk and who uses a mobility aid, including a motorized mobility aid, is not required to prove that he or she needs to use the mobility aid.

CRC employees are required to identify and report to management all instances where they become aware that a living unit or common area is not fully accessible to persons who use mobility aids.  In addition, residents and visitors are encouraged to report such instances to CRC staff.

## RESTRICTIONS ON THE USE OF
## MOTORIZED MOBILITY AIDS ON CRC CAMPUSES

A resident or visitor may not use a motorized mobility aid anywhere on any CRC campus unless that resident's or visitor's ability to walk is substantially limited due to a disability.

---

[1]  For purposes of this policy, a mobility aid is a device used for assistance with walking and includes canes, crutches, walkers, non-motorized wheelchairs, motorized wheelchairs, and motorized scooters.

[2]  For purposes of this Consent Order, "motorized mobility aid" means a single chair or seat mounted on a motorized apparatus with three or more wheels designed for use by persons with mobility disabilities.  Examples of motorized mobility aids are motorized wheelchairs and motorized scooters.

1

2   A resident or visitor may be restricted in the use of his or her <u>motorized</u> mobility
aid when it becomes evident to CRC management that that person's use of the motorized

3   mobility aid constitutes a direct threat to the health or safety of others or would result in
substantial physical damage to the property of others.  When this is the case, CRC <u>will</u> restrict

4   the use of the <u>motorized</u> mobility aid until that resident or visitor proves he or she is not a direct

5   threat to the health or safety of others or would not cause substantial physical damage to the
property of others.

6

7   To ensure the safety of residents, visitors and employees, CRC may establish
reasonable traffic and parking rules for the safe operation of motorized mobility aids, <u>e.g.</u>, speed,

8   yielding to pedestrians, optional parking areas for users who choose to park their mobility aids

9   outside.  Defendants may not require that persons who bring their motorized (or other) mobility
aids into the dining room eat at specified tables, but may designate or set aside seating pursuant

10  to the request of such persons or to ensure that mobility aids do not block ingress or egress of
others in the case of an emergency

11

12  ### NO DISCRIMINATION OR HARASSMENT AGAINST PERSONS WITH
DISABILITIES WHO USE MOBILITY AIDS

13

14  CRC employees shall not discriminate against or harass any resident or visitor
because he or she uses a mobility aid.  CRC employees will treat all residents and visitors who

15  use mobility aids, or that have, or are perceived to have, a mobility disability, with the same
respect and courtesy as residents and visitors who do not use mobility aids or do not have, or are

16  not perceived to have, a mobility disability.  This means CRC will not discriminate against any

17  resident or prospective resident with a mobility disability, or who is perceived to have a mobility
disability, in the terms or conditions or privileges of the sale or rental of a residential unit or in

18  the provision of services of facilities in connection with the sale or rental of a residential unit

19  because of that person's mobility disability or perceived mobility disability.

20  CRC employees are required to report to management all instances where they
become aware of discrimination or harassment against any person who uses a mobility aid or

21  who has, or is perceived to have, a mobility disability.  In addition, residents and visitors are

22  encouraged to report all instances of such discrimination or harassment to CRC staff.

23  Employees, residents and visitors may make reports orally or in writing, setting

24  forth the nature of the complaint.  The individual making the report should retain a copy of any
written report and make a written note of any verbal report, specifying the date and time it was

25  made and the name of the person to whom it was made.  All complaints will be investigated
promptly and in as impartial and confidential a manner as possible.  All employees and agents

26  are required to cooperate in any investigation.  A timely resolution of each complaint will be

27  reached and communicated to the parties involved.

28  Persons who are not satisfied with the handling of his or her reports may contact

2

the U.S. Department of Housing and Urban Development at 1-800-669-9777 or the U.S. Department of Justice at 1-800-896-7743 or 202-514-4713.

## NO RETALIATION FOR REPORTING

CRC residents, visitors and employees who make reports pursuant to this policy will not be retaliated against in any way for making the report. Under no circumstances will CRC management or a CRC supervisor take any of the following actions against an employee because he or she made a report:

A.   Change the employee's job duties or the tasks that are assigned to the employee.

B.   Change the employee's pay, the employee's work hours, the amount of overtime the employee is permitted to work, or any of the other conditions or benefits of the employee's job.

C.   Otherwise treat the employee or his or her co-workers less favorably in any way.

All CRC managers and supervisors have received training on how to handle reports made pursuant to this policy, and all reports will be treated seriously, with respect, and with appropriate discretion. CRC employees who are not comfortable with making a report to his or her manager or supervisor may make a report to any other manager or supervisor on campus. The employee will not be asked to provide any explanation or otherwise justify his or her decision.

**APPENDIX B**

## EMPLOYEE ACKNOWLEDGEMENT

I, _____, have received and read the Consent Order entered by the U.S. District Court in <u>United States v. Covenant Retirement Communities West, Inc., et. al.</u>, Case No. 1:04-cv-06732-AWI-SMS (E.D. Cal.) and the Mobility Aids Policy (Appendix A of Consent Order). I was given an opportunity to ask questions about the Consent Order and the Policy. I understand my legal responsibilities and will comply with those responsibilities. I further understand that the Court may impose sanctions on me if I violate a provision of the Consent Order and that my employer may also discipline me if I violate a provision of the Consent Order or the Policy.


_____
Signature


_____
Job Title


Dated: _____

1

**APPENDIX C**

2

## <u>EMPLOYEE CERTIFICATION OF TRAINING</u>

3

4      On _____, 200___, I, _____, was instructed by

_____ with respect to my responsibilities under the Fair Housing Act.  I

5  understand my legal responsibilities and will comply with those responsibilities.

6

7

8      _____

Signature

9

10      _____

Job Title

11

12

13      Dated:  _____

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**APPENDIX D**

**Notice to Potential Victims of Housing Discrimination**

**ATTENTION PERSONS WHO LIVED AT,**

**APPLIED TO LIVE AT OR SOUGHT TO LIVE AT**

**COVENANT VILLAGE OF TURLOCK, Turlock, CA**

**MOUNT MIGUEL COVENANT VILLAGE, Spring Valley, CA**

**THE SAMARKAND, Santa Barbara, CA**

**COVENANT VILLAGE OF COLORADO, Westminster, CO**

**COVENANT VILLAGE OF GOLDEN VALLEY, Golden Valley, MN**

**BETHANY COVENANT VILLAGE, Minneapolis, MN**

**COVENANT SHORES, Mercer Island, WA**

**COVENANT VILLAGE OF CROMWELL, Cromwell, CT**

**COVENANT VILLAGE OF FLORIDA, Plantation, FL**

**COVENANT VILLAGE OF THE GREAT LAKES, Grand Rapids, MI**

**COVENANT VILLAGE OF NORTHBROOK, Northbrook, IL**

**THE HOLMSTAD, Batavia, IL**

**WINDSOR PARK MANOR, Carol Stream, IL**

**COVENANT HOME OF CHICAGO, Chicago, IL or**

**IRVINGTON VILLAGE, Portland, OR**

**BETWEEN JANUARY 1, 1998 AND TODAY**

On _____, 2007, the United States District Court for the Eastern District of California entered a Consent Order resolving a lawsuit brought by the United States against the owners of the above retirement communities alleging that they discriminated against persons with disabilities in violation of Section 804 of the Fair Housing Act, 42 U.S.C. § 3604. In the lawsuit, the United States alleged that, among other things, these communities denied housing to, limited access to common areas for, or otherwise discouraged persons with disabilities who used mobility aids from living there. Mobility aids include wheelchairs, motorized wheelchairs, motorized scooters, walkers, crutches, and canes. Covenant Retirement Communities denies the allegations made by the United States in its lawsuit.

Under this Consent Order, the parties have agreed to resolve the lawsuit by establishing a claims process so that any individual who believes that he or she was subjected to any of the types of discrimination listed below may file a claim for compensation. You and/or your spouse

1

may be entitled to recover damages if you or your spouse:

– Were denied housing or otherwise discouraged from living at one of the above communities because you or your spouse used a mobility aid.

– Were denied access to or discouraged from using common facilities, including the dining hall, auditorium, rental office and other buildings or portions thereof, at one of the communities because you or your spouse used a mobility aid, or were restricted from using your mobility aid in such areas.

– Were required to buy insurance as a condition of residency at one of the communities because you or your spouse used a motorized wheelchair or scooter, or were required to meet other conditions, including providing proof of need, such as a doctor's note, and proof of ability to operate the motorized aid, such as being tested, before you could use it.

If you wish to make a claim for discrimination on the basis of disability, or if you have any information about persons who may have such a claim, please telephone the **U.S. Department of Justice at 1-800-896-7743 ext. 5, toll-free.** You may also write to the Department of Justice, Civil Rights Division, Housing and Civil Enforcement Section, 950 Pennsylvania Avenue, N.W. – NWB, Washington, D.C. 20530, Attn: 175-12C-577.

You _must_ call or write on or before [no more than 120 days after _____, 2008,] and your message or letter _must_ include your name, address, and, if possible, at least TWO telephone numbers where you may be reached. If you do not call or your letter is not postmarked by this deadline, your claim will be barred.

2

# APPENDIX E

1.     Access Center of San Diego, Inc.
   1295 University Avenue, Suite 10
   San Diego, CA 92103

2.     Center for Independent Living - Fresno
   3008 N. Fresno St.
   Fresno, CA 93703

3.     CIL-Fresno, North Valley Branch
   533 West Main St.
   Merced, CA 95340

4.     Disability Resources Agency for Independent Living (DRAIL)
   221 McHenry Avenue
   Modesto, CA 95354

5.     IL Resource Center Branch Office
   1802 Eastman Ave., Suite 112
   Ventura, CA 93003

6.     ILC of Southern California
   356-B East Avenue, Suite K4
   Lancaster, CA 93535

7.     Independent Living Resource Center
   423 West Victoria Street
   Santa Barbara, CA 93101

8.     The Motherlode Independent Living Center
   67 Linoberg St., Suite A
   Sonora, CA 95370

9.     Resources for Independent Living
   1211 H Street, # B
   Sacramento, CA 95814

10.     AARP Pasadena
    200 S. Los Robles Avenue, Suite 400
    Pasadena, CA 91101-2422

3

11.    AARP Sacramento
       1415 L Street, Suite 960
       Sacramento, CA 95814

12.    AARP San Francisco
       200 Pine Street, Suite 700
       San Francisco, CA 94104

13.    The Fair Housing Council of San Diego
       625 Broadway, Suite 1114
       San Diego, CA 92101

14.    Fair Housing Council of Central California
       560 E. Shields, #103
       Fresno, CA 93704

15.    Disability Center for Independent Living
       5900 East 39th Ave., Suite 4
       Denver, CO 80207

16.    Center for People with Disabilities
       1675 Range St.
       Boulder, CO 80302

17.    Atlantis Community, Inc.
       201 S. Cherokee Street
       Denver, CO 80223

18.    Legal Center for People with Disabilities and Older People
       455 Sherman Street, Suite 130
       Denver, CO 80203-4403

19.    Independent Living Council
       2022 E. Orman
       Pueblo, CO 81004

20.    AARP State Office
       1301 Pennsylvania Street, No. 200
       Denver, CO 80203

21.    Housing for All
       2855 Tremont Pl.
       Denver, CO 80205

4

22.    Washington Coalition of Citizens with Disabilities
       4649 Sunnyside North, Suite 100
       Seattle, WA 98103

23.    Independent Living Councils
       360 Trosper Rd., Suite 36F
       Olympia, WA 98512

24.    AARP Washington
       9750 Third Ave., NE
       Suite 450
       Seattle, WA 98115

25.    Fair Housing Center of Washington
       1517 South Fawcett, Suite 250
       Tacoma, WA 98402

26.    Disabilities Network of Eastern Connecticut
       238 W. Town St.
       Norwich, CT 06460-2111

27.    Center for Disability Rights
       764 Campbell Ave., Suite A
       West Haven, CT 06516

28.    AARP Connecticut
       21 Oak St., Suite 104
       Hartford, CT 06106

29.    Connecticut Fair Housing Center, Inc.
       221 Main Street
       Hartford, CT 06106

30.    Center for Independent Living of Broward
       8857 West McNab Road
       Tamarac, FL 33321

31.    AARP Florida
       3350 SW 148th Avenue, Suite 120
       Miramar, FL 33027

32.    Disability Advocates of Kent County
       3600 Camelot Dr. SE
       Grand Rapids, MI 49546

33. Disability Network
426 Century Lane
Holland, MI 49423

34. Michigan Independent Living Centers
417 Seymour, Suite 10
Lansing, MI 48933

35. AARP Michigan
309 N. Washington Square
Suite 110
Lansing, MI 48933

36. Fair Housing Center of West Michigan
1514 Wealthy S.E., Suite 226
Grand Rapids, MI 49506

37. Access Living
115 West Chicago Avenue
Chicago, IL 60610

38. Progress Center for Independent Living
7521 Madison St.
Forest Park, IL 60130

39. Dupage Center for Independent Living
739 Roosevelt Rd., Building 8
Suite 109
Glen Ellyn, IL 60137

40. Fox River Valley Center for Independent Living
730 B West Chicago St.
Elgin, IL 60123

41. Lake County Center for Independent Living
377 North Seymour Ave.
Mundelein, IL 60060

42. AARP Illinois
222 N. LaSalle St., Suite 710
Chicago, IL 60601

43.     HOPE Fair Housing Center
        2100 Manchester, Bldg. C, Suite 1620
        Wheaton, IL 60187

44.     Interfaith Housing Center of the Northern Suburbs
        620 Lincoln Avenue
        Winnetka, IL 60093

45.     South Suburban Housing Center
        18220 Harwood Avenue, Suite #1
        Homewood, IL 60430

46.     Chicago Area Fair Housing Alliance
        PO Box 1892
        Chicago, IL 60690

47.     Independent Living Resources, Inc.
        2410 SE 11th Ave.
        Portland, OR 97214-5308

48.     AARP Oregon
        9200 SE Sunnybrook Blvd, Suite 410
        Clackamas, Oregon 97015-5762

49.     Fair Housing Council of Oregon
        1020 SW Taylor Street, Suite 700
        Portland, OR 97205

50.     Courage Center
        3915 Golden Valley Road
        Minneapolis, MN 55422

51.     Metropolitan Center for Independent Living, Inc.
        1600 University Ave. West, Suite 16
        St. Paul, MN 55104-3834

52.     Southeastern Minnesota Center for Independent Living
        201 East Seventh St.
        Red Wing, MN 55066

53.     Independent Lifestyles, Inc.
        19463 Evans St., NW
        Elk River, MN 55330

54.   AARP Minnesota
      30 E. Seventh Street
      Suite 1200
      St. Paul, MN 55101

55.   Minnesota Fair Housing Center
      2414 Park Ave., S
      Suite 191
      Minneapolis, MN 55404

**APPENDIX F**

# RELEASE

In consideration for the parties' agreement to the terms of the Consent Order entered in United States v. Covenant Retirement Communities West, Inc., et. al., Case No. 1:04-cv-06732-AWI-SMS (E.D. Cal.), and the Defendants' payment to me of $_____, I, _____, hereby agree, effective upon receipt of payment, to remise, release and forever discharge all claims of any kind, nature or description whatsoever, related to the facts at issue in the litigation referenced above, or in any way related to that litigation, and any other claims arising from alleged housing discrimination on any bases up to and including the date of execution of this release, that I may have against Defendants Covenant Retirement Communities West, Inc., d/b/a Covenant Village of Turlock, Mount Miguel Covenant Village, The Samarkand, and Covenant Village of Colorado; Covenant Retirement Communities, Inc., d/b/a/ Covenant Village of Golden Valley, Covenant Shores, Covenant Village of Cromwell, Covenant Village of Florida, Covenant Village of the Great Lakes, Covenant Village of Northbrook, The Holmstad, Windsor Park Manor, Bethany Covenant Village, and Covenant Home of Chicago; and Covenant Village of Portland Limited Partnership, d/b/a Irvington Village, their agents, employees, partners, members, officers, heirs, executors, administrators, insurers, successors or assigns.

This is a full and final release of all known and disclosed as well as unknown and unanticipated injuries or damages arising out of the above-referenced civil action. I waive all rights or benefits which I have or in the future may have under the terms of Section 1542 of the Civil Code of the State of California, and do so understanding and acknowledging the significance and consequence of such specific waiver of that Section, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

I acknowledge and understand that, by signing this Release and accepting this payment, I am waiving any right to pursue my own legal action based on the discrimination alleged by the United States in this case.

In addition, I hereby represent and warrant that I have not assigned to any person or entity all or part of any of the claims that are released, or that may be released, by signing this Release. I stipulate and agree that I shall not dispute, in any federal or state court or administrative action or proceeding related to this Release or the allegations in the Lawsuit, that such warranty and representation is a material term with respect to the payment of the payment specified above and agree to indemnify, and hold harmless, CRC for any breach thereof.

1

1   I also acknowledge that I have been informed that I may review the terms of this Release
2   with an attorney of my choosing, and to the extent that I have not obtained legal advice, I
    voluntarily and knowingly waive my right to do so.
3
4   This Release constitutes the entire agreement between Defendants Covenant Retirement
    Communities West, Inc., d/b/a Covenant Village of Turlock, Mount Miguel Covenant Village,
5   The Samarkand, and Covenant Village of Colorado; Covenant Retirement Communities, Inc.,
    d/b/a/ Covenant Village of Golden Valley, Covenant Shores, Covenant Village of Cromwell,
6   Covenant Village of Florida, Covenant Village of the Great Lakes, Covenant Village of
7   Northbrook, The Holmstad, Windsor Park Manor, Bethany Covenant Village, and Covenant
    Home of Chicago; and Covenant Village of Portland Limited Partnership, d/b/a Irvington
8   Village, and me, without exception or exclusion.

9   I declare under penalty of perjury that the foregoing is true and correct.

10
11      Executed this ____ day of _____, 20___.

12      _____
13      (Signature)

14      Name: _____

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2